# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### GREAT FALLS DIVISION

| | |
|---|---|
| KENNETH PAUL YOUNG, | Cause Nos. CV 09-00022-GF-SEH-RKS |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| CORRECTION CORPORATION OF AMERICA, et. al., | |
| Defendants. | |

Pending is Plaintiff Kenneth Young's Motion to Proceed In Forma Pauperis (Document 1) and proposed civil rights Complaint filed pursuant to 42 U.S.C. § 1983.  (Document 2).

## I.  STATEMENT OF THE CASE

### A.    Jurisdiction

Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 seeking to recover for alleged federal constitutional violations while incarcerated at Crossroads Correctional Center in Shelby, Montana.   Accordingly, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE –
CV-09-00022-GF-SEH-RKS / PAGE 1

**B.     Parties**

Plaintiff is a state prisoner incarcerated at the Montana State Prison in Deer Lodge, Montana.

The named Defendants are:  Correctional Corporation of America, Warden McDonald, the Health Administration at Crossroads Correctional Center, Unit Manager Strichio, Nurse Larson, Dr. Gilliani, and Dr. Bonderud.

**C.  Plaintiff's Allegations**

Plaintiff was incarcerated at Crossroads Correctional Center from December 12, 2006 until April 1, 2008.  He contends he approached Unit Manager Stergio on October 1, 2007, October 15, 2007, and November 6, 2007 informing him of threats upon Plaintiff's life by another inmate, LaPiere, and that inmate separation needs were necessary.  Plaintiff states staff had been previously informed of LaPiere's history by Plaintiff but staff disregarded the difference in the inmates' custody levels.  Inmate LaPiere was a closed custody inmate and Plaintiff was a minimum custody inmate.

On the night of November 9, 2007, Inmate LaPiere assaulted Plaintiff in his sleep.  Plaintiff's left facial area and eye were injured and he suffered a concussion, memory loss, and multiple episodes of "emesis."

Staff sent Plaintiff to medical for an evaluation of the trauma sustained in the assault.  Nurse Larson referred Plaintiff to Optician Bonderud.  Bonderud recommended ice for 24 hours and then heat.  Plaintiff continued to have numbness to his left face area and pain to his left eye and abnormal bone protrusion.  On November 15, 2007, Plaintiff was seen by CCA medical staff complaining of the same symptoms.  Plaintiff contends those symptoms were not addressed.  The medical records attached to Plaintiff's Complaint indicate Plaintiff was given a cream on November 15, 2007 to apply to his lesions.[1]

On December 5, 2007, Dr. Bonderud saw Plaintiff for a follow-up.  Plaintiff continued to have pain in his left eye, numbness to his face, blood out of his nose, pain when moving his jaw on the left side, and a bone protrusion on his left cheek.  Dr. Bonderud examined Plaintiff and recommended warm compresses and massage.

CCA medical staff saw Plaintiff again on December 18, 2007 for pain to his left eye, numbness to the left side of his face, and a bone protruding and not healing properly below his left eye.  He was treated with ibuprofen.

_____

[1]*See* *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (holding courts may consider material that is properly submitted as part of the complaint in determining if the complaint states a claim upon which relief can be granted).

On December 22, 2007, CCA medical staff saw Plaintiff for his continued numbness and a lump to bone under his left eye.  An x-ray of his left cheek/orbit was ordered.

CCA medical staff also Plaintiff on January 9, 2008.  On that date the x-ray order was cancelled and no treatment recommendations were made for the bone fracture and nerve damage.

Plaintiff presumably transferred to Montana State Prison on or about April 1, 2008.  According to the documents attached to Plaintiff's Complaint, Plaintiff had an x-ray done at Powell County Memorial Hospital on July 31, 2008.  The impression from that x-ray was:  "subtle buckling suspected of the left orbital floor, of which CT of the maxillofacial region is recommended for further evaluation."

## II.  MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff submitted a declaration and account statement sufficient to make the showing required by 28 U.S.C. §1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

Pursuant to 28 U.S.C. § 1915(b)(1) Plaintiff must pay the statutory filing fee of $350.00.  Because the current balance of Plaintiff's account is not known, the

initial partial filing fee will be waived.  Plaintiff must make monthly payments of 20 percent of the preceding month's income credited to his institutional account. By separate order, the agency having custody of Plaintiff will be directed to forward payments from Plaintiff's account to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

Plaintiff's Complaint is deemed filed as of the date the Motion to Proceed In Forma Pauperis was filed and the proposed complaint was delivered to the Clerk of Court.  *See Loya v. Desert Sands Unified Sch. Dist.,* 721 F.2d 279, 280-81 (9th Cir. 1983); *see also United States v. Dae Rim Fishery Co.,* 794 F.2d 1392, 1395 (9th Cir. 1986) (concluding complaint constructively filed when delivered to clerk of court).

## III.  PRESCREENING

### A.  Standard

As Plaintiff is a prisoner proceeding in forma pauperis, his Complaint is subject to screening under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A.  Section 1915A reads in pertinent part as follows:

> The court shall review  . . .  as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a

governmental entity or officer or employee of a governmental entity
[and][o]n review, the court shall identify cognizable claims or dismiss
the complaint, or any portion of the complaint, if the complaint (1) is
frivolous, malicious, or fails to state a claim upon which relief may be
granted; or (2) seeks monetary relief from a defendant who is immune
from such relief.

28 U.S.C. § 1915A(a) and (b); *see also* 28 U.S.C. § 1915(e)(2)(B)

("Notwithstanding any filing fee, or any portion thereof, that may have been paid,

the court shall dismiss the case at any time if the court determines that . . . (B) the

action or appeal-(i) is frivolous or malicious; (ii) fails to state a claim on which

relief may be granted; or (iii) seeks monetary relief against a defendant who is

immune from such relief.").

Sections 1915A(b) and 1915(e)(2)(B) allow for the dismissal of the

complaint before it is served upon the defendants if it is "frivolous" or "fails to

state a claim upon which relief may be granted." A complaint is frivolous if it

"lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S.

319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A complaint fails to

state a claim upon which relief may be granted if a plaintiff fails to allege the

"grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotation omitted). This

requirement demands "more than labels and conclusions, [or] a formulaic

recitation of the elements of a cause of action." *Id.*  A complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)(quoting *Bell*, 127 S.Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))).

Additionally, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 127 S.Ct. at 2200; *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

Although the statute requires a dismissal for the reasons stated, it does not deprive the district court of its discretion to grant or deny leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  The court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts."  *Id.* (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing

*Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

### B. Failure to Protect

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982); *see also* *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *See Farmer*, 511 U.S. at 834. The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837; *Gibson v. County of Washoe*, 290 F.3d 1175, 1187-88 (9th Cir. 2002); *Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir. 2001).

In light of Plaintiff's allegations that he informed Defendant Strichio his need for protection from Inmate LaPiere and thereafter he was attacked by LaPiere, Plaintiff's allegations are sufficient to state a claim of deliberate indifference to an inmate's safety against Defendant Strichio.

Plaintiff also names Corrections Corporation of America as a Defendant in this claim.  State prisoner may bring suit under Section 1983 against privately owned correctional  facilities.  *Corrections Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 n. 5, 122 S.Ct. 515 (2001).  But Corrections Corporation of America cannot be held liable under § 1983 simply because one of its employees may have violated Plaintiff's constitutional rights.  *See Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir.1993) (holding that a private store acting under color of state law cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006); *Rodriguez v. Smithfield Packing Co., Inc.,* 338 F.3d 348 (4th Cir. 2003); *Powell v. Shopco Laurel Co.*, 678 F.2d 504 (4th Cir. 1982); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406 (2nd Cir. 1990); *and Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982).[2]

Therefore, in order to prevail against CCA as an entity, Plaintiff must meet the test articulated in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[3]  Under *Monell*, requisite

---

[2]This issue does not appear to have been decided in the Ninth Circuit.

[3]*See, e.g., Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (cataloguing circuit court cases applying Monell to private entities).

elements of a § 1983 claim against a municipality or private entity performing a state function are the following:  (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).  An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled [entity] policy." *Monell*, 436 U.S. at 691.  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).

Plaintiff's failure to protect claim, as currently plead, fails to state a claim upon which relief may be granted against CCA.  This is a defect which could potentially be cured by amendment.  Accordingly, Plaintiff will be given an opportunity to amend his failure to protect claim against CCA.

Similarly, Plaintiff's failure to protect allegation against Warden McDonald, as currently plead, fails to state a claim upon which relief may be granted.  Section

1983 imposes liability upon state actors only when their <u>personal conduct</u> violates a plaintiff's constitutional rights.  *Monell*, 436 U.S. at  691-94.  That is, Defendant McDonald will not be held liable just because he oversaw Crossroads Correctional Center.  Instead, supervising officers can be held liable under section 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).  In order to be liable, a supervising officer has to personally take some action against the Plaintiff or "set in motion a series of acts by others . . . , which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations omitted).  Thus, as to <u>each</u> defendant he wishes to hold responsible, a plaintiff must allege specific facts showing what that person did or did not do, when and where, and how each defendant's action or inaction caused or contributed to causing a violation of his civil rights.

This is a defect which could potentially be cured by the allegation of additional facts, accordingly, Plaintiff will be given an opportunity to amend his Complaint.

### C.  Medical Care Claims

Plaintiff's medical care claim arises under the Eighth Amendment of the United States Constitution.  The Eighth Amendment requires that prisoners receive adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  To state an arguable section 1983 claim for failure to provide medical care, a prisoner must allege that a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106; *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

Deliberate indifference under the Eighth Amendment involves the consideration of two elements:  "[1] the seriousness of the prisoner's medical need[;] and [2] the nature of the defendant's response to that need."  *McGuckin*, 974 F.2d at 1059; *see also Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003).  That is, a plaintiff must demonstrate "'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care.  Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation."  *Clement v. Gomez*, 298 F.3d 898,

904 (9th Cir. 2002)(citing *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)).

The objective component of deliberate indifference requires the showing of a serious medical need.  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." *McGuckin*, 974 F.2d at 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estelle*, 429 U.S. at 104-105.

The subjective component of deliberate indifference considers the nature of the defendant's response to the serious medical need and whether the defendant had a culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)(quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  "[T]he official's conduct must have been 'wanton,' which turns not upon its

effect on the prisoner, but rather, upon the constraints facing the official." *Frost, 152 F.3d at 1128* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)).  "This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett, 439 F.3d at 1096* citing *McGuckin, 974 F.2d at 1060*.  "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett, 439 F.3d at 1096*.

Plaintiff has not made a sufficient showing of deliberate indifference. Although Plaintiff may have had a condition which required medical treatment, he admits and the medical records attached to his Complaint demonstrate the medical staff at Crossroads was attempting to address those concerns.  Specifically, Plaintiff was seen the day of the attack (November 9, 2007) by Dr. Bonderud and advised to use heat and ice on his eye.  He had follow-ups visits on November 15, December 5, December 18, December 22, and January 9.  Plaintiff was prescribed pain medications and seen on a regular basis.  The mere fact Plaintiff was seen by an optometrist and not an ophthalmologist and was not sent for an x-ray does not

establish deliberate indifference to a serious medical need.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer*, 511 U.S. at 835.  "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corrections*, 220 F.Supp.2d 1098, 1105 (N.D.Cal.2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).  State prison officials have "wide discretion regarding the nature and extent of medical treatment." *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Therefore, Plaintiff cannot state a claim for denial of medical care under the Eighth Amendment of the United States Constitution and this claim will be recommended for dismissal.

## IV. CONCLUSION

### A.  Leave to Amend

Plaintiff's medical care claim will be recommended for dismissal but Plaintiff will be allowed to file an amended complaint with regard to his failure to

protect claim.  In his amended complaint, Plaintiff must write short, plain statements telling the Court:  (1) the constitutional right violated; (2) when the violation occurred; (3) the name of the defendant(s) who violated the right; (4) exactly what each defendant did or failed to do; (5) how the action or inaction of that defendant is connected to the violation of Plaintiff's constitutional right; and (6) what injury Plaintiff suffered because of that defendant's conduct.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Plaintiff must repeat this process for each defendant.  If Plaintiff fails to affirmatively link the conduct of a defendant with an injury suffered by Plaintiff, the allegation against that defendant will be dismissed for failure to state a claim. Further, Plaintiff must comply with the Court's directions regarding naming defendants in his failure to protect claim.  Conclusory allegations that a defendant or group of defendants have violated a constitutional right are not acceptable, and will be dismissed.

Rule 18(a) of the Federal Rules of Civil Procedure provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."  Therefore, Plaintiff may bring multiple claims against a single party.

Unrelated claims against different defendants belong in different lawsuits.  *See*

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

It is inappropriate to attach exhibits to a complaint.  *See* Rule 8 of Federal

Rules of Civil Procedure.  The Court will not be a repository for the parties'

evidence.  Originals or copies of evidence (i.e., prison or medical records, witness

affidavits, etc.) should not be submitted until it comes into question (for example,

on a motion for summary judgment, at trial, or when requested by the Court).  At

this point, the submission of evidence is premature as Plaintiff is only required to

state a prima facie claim for relief.  Thus, in amending his complaint, Plaintiff

should refrain from submitting exhibits.

Plaintiff's amended complaint must be retyped or rewritten in its entirety on

the court-approved form and may not incorporate any part of the original

Complaint by reference.  If Plaintiff fails to use the court-approved form, the Court

may strike the amended complaint and dismiss this action.

**B.  Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his

release.  Also, within 30 days of his release, he must either (1) notify the Court

that he intends to pay the balance or (2) show good cause, in writing, why he

cannot.  Failure to comply may result in dismissal of this action.

### C. Address Changes

At all times during the pendency of this action, Plaintiff SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information pertaining to the change of address and its effective date, except if Plaintiff has been released from custody, the notice should so indicate.  The notice shall not include any motions for any other relief. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based on the foregoing, the Court issues the following:

### ORDER

1.  Plaintiff's Motion to Proceed in Forma Pauperis (Document 1) is **GRANTED**.  The Clerk of Court shall waive prepayment of the filing fee.  While Plaintiff will not be assessed an initial partial filing fee, Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action as set forth above.

2.  The Clerk shall edit the text of the docket entry for the Complaint (Document 2) to remove the word "LODGED" and the Complaint is **DEEMED**

**FILED** on March 12, 2009.

3.  On or before **May 8, 2009**, Plaintiff may file an amended complaint.

4.  The Clerk of Court is directed to provide Plaintiff a form for filing an amended complaint.  Plaintiff is required to use this form if he chooses to file an amended complaint.

Further, the Court issues the following:

## RECOMMENDATIONS

Plaintiff's medical care claim and Defendants Larson, Gilliani, Bonderud, and the Crossroads Health Administration should be **DISMISSED**.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and

Recommendations.  Failure to timely file written objections may bar a de novo

determination by the district judge and may waive the right to appeal the District

Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

      This order is not immediately appealable to the Ninth Circuit Court of

Appeals.  Any notice of appeal pursuant to Fed.R.Civ.P. 4(a)(1), should not be

filed until entry of the District Court's final judgment.

      DATED this 10th day of April, 2009.


                     */s/ Keith Strong*

                     Keith Strong
                     United States Magistrate Judge