IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| KENNETH PAUL YOUNG,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, et al.,<br><br>Defendants. | Cause No. CV 09-00022-GF-SEH-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS' MOTION TO DISMISS |

Pending is Defendants Corrections Corporation of America and Unit Manager Ron Sturchio's Motion to Dismiss based upon Plaintiff's failure to exhaust his administrative remedies. (Court Doc. 12). The Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331.

Since Plaintiff failed to properly exhaust his administrative remedies, Defendants' motion should be granted.

I. STANDARD

Defendants filed their Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, requesting the Court dismiss this

matter based upon Plaintiff's failure to exhaust his administrative remedies. A motion to dismiss based on a prisoner's failure to exhaust administrative remedies is properly the subject of an unenumerated motion under Federal Rule of Civil Procedure 12(b). See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119-20. Where the court looks beyond the pleadings to a factual record in deciding the motion to dismiss, which is "a procedure closely analogous to summary judgment," the court must assure that the plaintiff has fair notice of his opportunity to develop a record. Wyatt, 315 F.3d at 1120 n. 14 (referencing the notice requirements outlined in Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). Defendants served a Rand Notice upon Plaintiff with the filing of their Motion to Dismiss. (Court Doc. 14).

   Defendants bear the burden of establishing that the plaintiff failed to exhaust administrative remedies prior to filing suit. See

Wyatt, 315 F.3d at 1120.  If the court concludes that administrative remedies have not been exhausted, the unexhausted claims should be dismissed without prejudice.  Wyatt 315 F.3d at 1120; see also Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

## II.  PLAINTIFF'S ALLEGATIONS

Plaintiff was incarcerated at Crossroads Correctional Center from December 12, 2006 until April 1, 2008 when he was transferred to Montana State Prison.  While at Crossroads, Plaintiff contends he advised Unit Manager Sturchio on October 1, 2007, October 15, 2007, and November 6, 2007 that another inmate, LaPiere, was threatening his life and he needed to be separated from LaPiere.  Plaintiff was not moved and on the night of November 9, 2007, Inmate LaPiere assaulted Plaintiff in his sleep.  Plaintiff's left facial area and eye were injured and he suffered a concussion, memory loss, and multiple episodes of "emesis."

## III.  ANALYSIS

Defendants move to dismiss Plaintiff's claims arguing Plaintiff failed to properly exhaust his administrative remedies as required by

the Prison Litigation Reform Act ("PLRA").  The PLRA's exhaustion requirement states that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).  This exhaustion requirement is mandatory.  Booth, 532 U.S. at 741.

The PLRA is applicable in this case and therefore Plaintiff must exhaust all available administrative remedies prior to filing this lawsuit.

Crossroads follows the administrative grievance procedure set forth in Montana Department of Corrections Policy No. 3.3.3.  This policy provides the procedure for inmates to use to redress any complaints or grievances they may have.  (Court Doc. 13-2: Law Affidavit; Exhibit A:  MSP Policy 3.3.3).  The procedure provides inmates with four levels at which they may resolve a complaint.  Step

one involves the submitting an informal resolution form within five days of the event at issue. (Court Doc. 13-1: Law Affidavit, ¶ 8, Policy 3.3.3, Section III(E)). If the inmate is not satisfied with the response to the informal grievance and wishes to exhaust administrative remedies, the inmate must file a formal grievance, which is responded to by the prison grievance coordinator. (Court Doc. 13-1: Law Affidavit, ¶ 9, Policy 3.3.3, ¶ III(E)(4) & (F)). The grievance procedure then provides for appeals at two levels, first to the warden and then to the director of the Department of Corrections. (Court Doc. 13-1: Law Affidavit, ¶ 10, Policy 3.3.3, ¶ III(I)(a) and K)).

While Plaintiff was at Crossroads he submitted an informal resolution form on November 18, 2007 complaining about loss of his prison work assignment. In that grievance he mentioned the November 9, 2007 assault but he did not submit a formal grievance or appeal of the denial of that grievance. On November 25, 2007, Plaintiff submitted another grievance regarding getting his job back. He submitted a third informal resolution form on January 4, 2008 regarding getting into the relapse prevention group.

...

Plaintiff transferred to Montana State Prison on April 1, 2008. On June 28, 2008, Plaintiff filed an informal resolution form stating:

> In Shelby on 11-9-07 LaPiere attacked me in my sleep and did sesver [sic] damage to my face. This is after over a month trying to get him out of my cell. Unit Manager Sturcho would not move him and well knowing the kind of person LaPiere is. When they were finally going to x-ray my face on 1-10-08 Dr. Geanelle examed [sic] my face and said it was broke in 2 places and there is nothing that they are going to do about it. I still have a bone sticking out and have pain in my face and headaches. Either D.O.C. or C.C.A. has to fix my face. And for the neglagence [sic] I am seeking 150,000.00 in compensation.

(Court Doc. 19-1, p. 6).

Plaintiff followed up with a formal grievance on July 17, 2008, making the same claims as in his informal resolution form. On September 3, 2008, Plaintiff appealed to the Director of the Department of Corrections. On October 20, 2008, the Director denied the appeal, stating Plaintiff's complaints about the medical care he had received were without merit.

Defendants argue these grievances were insufficient to properly exhaust Plaintiff's claims. Exhaustion must be "proper," meaning a grievant must correctly use all steps the agency sets forth to allow the

prison a chance to reach the merits of the issue in an effective manner. Woodford v. Ngo, 548 U.S. 81, 90-93 (2006). A prisoner must file timely and otherwise procedurally non-defective administrative grievances or appeals to constitute "proper" exhaustion. Woodford, 548 U.S. at 83. Prisoners need comply only with the prison's own grievance procedures to properly exhaust under the PLRA. Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910 (2007).

The Court need not decide whether or not Plaintiff actually raised his failure to protect claim in his June 28, 2008 grievance (Grievance No. 7-08-53). Defendants are correct that the series of grievances filed after Plaintiff was transferred to the Montana State Prison were untimely and therefore failed to comply with the applicable procedural rules governing the grievance process.

In response to Defendants' Motion Plaintiff argues, "On the informal resolution from plaintiff on 11-18-07, plaintiff was threatened by US Sturchio that plaintiff would be thrown in the hold if he persuaded the situation any further." (Court Doc. 17, p. 1).

As recently recognized by the Ninth Circuit, there are exceptions

to the PLRA's exhaustion requirement. Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010). The Court in Nunez discussed how several other circuits have excused the exhaustion requirements based upon threats. See Kaba v. Stepp, 458 F.3d 678, 684-86 (7th Cir. 2006)(remanded to the district court to determine whether prison officials' threats had effectively prevented the prisoner from exhausting administrative remedies); Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008)( prisoner threatened with retaliation by prison officials if he filed a grievance was excused from complying with the PLRA's exhaustion requirements); Macias v. Zenk, 495 F.3d 37, 45 (2d Cir. 2007) (case remanded for a determination whether a prison official's threats had deterred the prisoner from exhausting his administrative remedies, rendering those remedies effectively unavailable, and whether the defendants should therefore be estopped from asserting lack of exhaustion as a defense).

Even assuming that threats of retaliation could excuse the exhaustion requirement, Plaintiff failed to provide evidence that the prison officials obstructed his ability to exhaust his administrative

remedies. Plaintiff represents Defendant Sturchio threatened him on the informal resolution dated November 18, 2007 that he would be thrown in the hole if he "persuaded" the situation any further. Plaintiff's November 18, 2007 informal resolution form complains about Unit Manager Sturchio giving him a 90-day hold in his job. Plaintiff indicates in that form:

> I was trying to get LaPiere out of my cell for over a month. The last time I talked to Unit Manager Stirchio was 11-5-07 and I told him things were bad in my cell. Then on the early morning hours of 11-9-07 LaPiere attacked me in my sleep. Where I took a sevier [sic] beating. Then on 11-12-07 Unit Manager Stirchio told me he was giving me a 90 day hold in my job. I was never wrote up and I believe he did that was because he did not do anything about what was going on in my cell, and the beating I took because of him. I want my job back. From what Miss. Hinrich said he should not be able to take my job I was never wrote up.

(Court Doc. 20-1).

The response on the grievance (presumably from Sturchio) states: "You were fired because you can't follow verbal orders by staff to keep putting pieces of plastic in your earlobe. When I asked you why you had a black eye you told me that you woke up that way and that you also didn't feel good. I sent you to medical." The response is dated

November 19, 2007. (Court Doc. 20-1).

The November 18, 2007 informal resolution form does not specifically grieve the failure to protect issue and it does not support Plaintiff's claim that Defendant Sturchio threatened him with being thrown in the hole if he pursued the situation. In fact, the grievance indicates it was simply Plaintiff's speculation that the reason he was fired was because of the beating incident. There is no indication in that grievance that Sturchio made threats of placing Plaintiff in the hole.

In addition, Plaintiff was not dissuaded from filing grievances in that he filed informal resolution forms on other issues on November 25, 2007 and January 4, 2008.

Even if Plaintiff felt threatened at Crossroads, he failed to timely grieve the issue once he was transferred to Montana State Prison. Plaintiff was transferred to Montana State Prison on April 1, 2008 but waited nearly three months until June 28, 2008 to file a grievance regarding his facial injuries. (Again, it is not clear whether the June 28, 2008 grievance was grieving the failure to protect issue or just the lack of medical care issue).

The Court finds Plaintiff's claims of fear of retaliation implausible in light of his November 18, 2007 grievance indicating it was simply his belief that Sturchio fired him because of the beating incident, his continued filing of grievances, and his delay in filing his grievance after his arrival at Montana State Prison.

The Court finds Plaintiff failed to properly exhaust his administrative remedies prior to filing this lawsuit.  42 U.S.C. § 1997e(a) requires dismissal when a plaintiff does not exhaust administrative remedies prior to filing a lawsuit.  McKinney v. Carey, 311 F.3d 1198, 1198 (9th Cir. 2002).

Accordingly, the Court issues the following:

### RECOMMENDATIONS

1. Defendants' Motion to Dismiss (Court Doc. 12) should be GRANTED and this matter DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies prior to filing suit.

2. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(3)(1) of the Federal Rules of Appellate Procedure that any appeal of this decision would not

be taken in good faith. It is sufficiently clear that Plaintiff's failure to exhaust him administrative remedies demands dismissal and no reasonable person could suppose an appeal would have merit.

3. The Clerk of Court should be directed to enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

This Order is not appealable and any notice of appeal pursuant to Fed.R.App.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

DATED this 12th day of March, 2010.

          /s/ Keith Strong
          Keith Strong
          United States Magistrate Judge